IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jonathan Michael Brown | C/A No. 8:24-cv-5077-JFA |
| Petitioner, | |
| v. | **ORDER** |
| Warden of Perry Correctional Institution, | |
| Respondent. | |

## I.    INTRODUCTION

Jonathan Michael Brown (Petitioner), a state prisoner proceeding *pro se*, seeks habeas relief pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), the case was referred to the Magistrate Judge.

On January 8, 2025, the Warden of Perry Correctional Institution (Respondent) filed a motion for summary judgment. (ECF No. 22). Petitioner filed a response on February 10, 2025, (ECF No. 30), and Respondent filed a reply on February 18, 2025, (ECF No. 32). Thereafter, the Magistrate Judge issued a thorough Report and Recommendation (Report), advising this Court to grant Respondent's motion and dismiss the Petition with prejudice. (ECF No. 40). For the reasons discussed below, the Court adopts the Report as modified herein and grants Respondent's motion.

## II.    FACTS

As noted above, this action relates to Petitioner's request for habeas relief. The Court takes the following background directly from the Report:

Petitioner was indicted in May 2014 by the Dorchester County Grand Jury for two counts of criminal sexual conduct with a minor under eleven years of age – first degree (2013-GS-181408, 2013-GS-18-1409).  (ECF No. 21-2 at 217–20).  Petitioner was subsequently indicted by the Dorchester County Grand Jury in July 2014 for an additional count of criminal sexual conduct with a minor under eleven years of age – first degree (2013-GS-18-1410). *Id.* at 221–22. On July 14, 2014, Petitioner proceeded to trial before the Honorable Maite Murphy.  *Id.* at 1–17; (ECF No. 21-1 at 3–266).  Pierce Wehman and John Loy (trial counsel) represented Petitioner, and Glenn Justis and Kyle Ward represented the State.  (ECF No. 21-1 at 3).  The jury found Petitioner guilty on all charges.  *Id.* at 68–71.  Judge Murphy sentenced Petitioner to life imprisonment for each count.  *Id.* at 78–79.  Petitioner is currently incarcerated at Perry Correctional Institution in the South Carolina Department of Corrections (SCDC). (ECF No. 1 at 1).

**Suppression Hearing**

Prior to trial, Petitioner moved to suppress photographs and videos that law enforcement found on his cellphone and argued that his cellphone was unlawfully seized without a warrant in violation of the Fourth Amendment. (ECF No. 21-17 at 66–67). Petitioner testified that he was arrested and taken into custody by law enforcement around 1:00 p.m. on July 28, 2013. *Id.* at 68. Petitioner testified that when officers arrived at his residence, he was the only person home. *Id.* Petitioner testified that he was sitting at his computer, which was positioned to the left of the front door, when he heard something on the front porch. *Id.* at 69. Petitioner got up, opened the door, and saw officers standing by the door. *Id.* Petitioner shut the door, opened the door a few seconds

later, and then walked onto the front porch. *Id.* at 70. Petitioner testified that the officers identified themselves as belonging to the Summerville Police Department, told him that he was under arrest, and pushed him against the wall of the residence. *Id.* at 71. Petitioner asked if they could move into the residence so as to not cause a scene in front of the neighbors. *Id.* The officers agreed and went inside the house. *Id.* After taking three or four steps into his residence, officers arrested Petitioner. *Id.* at 72.

Petitioner testified that after he was placed under arrest and read his *Miranda* rights, an officer asked him where his cellphone was located. (ECF No. 21-17 at 73). Petitioner "motioned over on the back of the fish tank …." *Id.* at 74. Petitioner testified that the officer grabbed the cellphone, and Detective Jason Mosher (Detective Mosher) indicated that it was the cellphone that a victim had described. *Id.* Petitioner testified that no one asked for permission to search his home or to take custody of any of his property. *Id.* at 74–75. Petitioner testified that someone asked him if they could take his cellphone, but before he could answer, Detective Mosher said, "Well, that's the phone that's in question.  We're taking it." *Id.* at 75. Petitioner testified that officers then escorted him into the back of a police car and transported him to the Summerville Police Department. *Id.* at 74.

Detective Mosher also testified at the suppression hearing. Detective Mosher stated that after an investigation, he had reason to believe that there was probable cause for Petitioner's arrest. (ECF No. 21-17 at 79–80). After obtaining two arrest warrants, Detective Mosher went to Petitioner's residence, and Petitioner answered the door. *Id.* at 80. Detective Rick Gebhardt (Detective Gebhardt) and two other officers also responded

to Petitioner's residence. *Id.* Detective Mosher testified that he knocked on the front door, and Petitioner answered. *Id.* Detective Mosher identified himself as law enforcement and asked Petitioner to step outside. *Id.* Petitioner asked if the officers could step inside "because he didn't want to air his business outside." *Id.* The officers complied and stepped inside. *Id.* Detective Mosher explained to Petitioner that they had warrants for his arrest. *Id.* Detective Mosher advised Petitioner that he was being placed under arrest and read Petitioner his *Miranda* rights. *Id.* Detective Mosher testified that Petitioner had a phone in his hand when he walked inside the residence. *Id.* Detective Mosher testified that when he told Petitioner that he was under arrest, Petitioner put everything down on the computer stand next to the front door. *Id.* at 80–81. Detective Mosher testified that he wanted to make sure that Petitioner had the property that he wanted to take to the jail with him, so Detective Mosher asked Petitioner if he wanted to take his cellphone and keys with him. *Id.* at 81. Detective Mosher testified that Petitioner indicated he wanted to take those items with him. *Id.* The officers collected the cellphone and keys from the computer stand and took them at Petitioner's request. *Id.* No searches of the property were conducted at that time. *Id.* Petitioner was then transported to the Summerville Police Department. *Id.*

Detective Mosher testified that Petitioner's arrest occurred the day after Petitioner's niece reported being sexually assaulted. (ECF No. 21-17 at 82). Petitioner's niece was taken to a medical facility, and she reported a version of what occurred. *Id.* Petitioner's daughter was also seen at the hospital that morning and provided information. *Id.* Both children indicated that during the events they described, Petitioner

used his cellphone to take either photos or videos. *Id.* at 82–83. Detective Mosher then obtained warrants for Petitioner's arrest. *Id.* at 84. When asked why he did not obtain a search warrant for Petitioner's cellphone, despite knowing the cellphone may contain relevant evidence, Detective Mosher testified that he felt it was more important to apprehend Petitioner than to obtain his cellphone. *Id.* at 86. Detective Mosher testified that once Petitioner arrived at the Summerville Police Department, Detective Gebhardt gave him a property receipt for the cellphone. *Id.* at 89. Detective Mosher testified that Detective Gebhardt secured the cellphone until a search warrant was obtained and executed. *Id.*

Detective Gebhardt testified at the suppression hearing that when he returned to the Summerville Police Department after arresting Petitioner, he and Detective Mosher attempted to interview Petitioner. (ECF No. 21-17 at 96). After the interview, Petitioner was brought into the booking room with his property, and Detective Gebhardt took custody of Petitioner's cellphone and gave Petitioner a property receipt. *Id.* at 96–97. Detective Gebhardt testified that he placed the phone on airplane mode, which prohibits a signal from coming to the device or leaving the device and therefore preserves the information on the device at that moment. *Id.* at 97. Detective Gebhardt then secured the phone in the desk drawer in his office. *Id.* The following day, Detective Gebhardt obtained a search warrant for the cellphone. *Id.*

After the testimony was presented at the suppression hearing, trial counsel argued that Petitioner's cellphone was unlawfully seized without a warrant at the time of his arrest. (ECF No. 21-17 at 101). Trial counsel argued that, as a result of this seizure, the

photos and videos obtained from the cellphone should be suppressed despite officers' subsequent actions of obtaining a search warrant. *Id.* at 103–04. The court found that the State met its burden of proving that Petitioner consented to the seizure. *Id.* at 106. The court stated, "[t]he Fourth Amendment does not require police officers to tell him that he can refuse to consent to take his phone." *Id.* The court found that it was reasonable for the officers to seize the cellphone once they were at the Summerville Police Department and secure it until a search warrant was obtained. *Id.* at 106–07. As such, the court denied Petitioner's motion to suppress. *Id.* at 107.

During Petitioner's trial, the State entered into evidence and published before the jury four photos and four videos recovered from Petitioner's cellphone. (ECF No. 21-2 at 1–4). The videos showed an individual digitally penetrating and sodomizing Petitioner's five-year-old daughter, and the photos showed the vaginal and anal area of Petitioner's eight-year-old niece. *Id.*

**Direct Appeal**

Petitioner, represented by Lara Caudy (appellate counsel), filed an *Anders* brief on May 19, 2015, presenting the following issue on direct appeal:

> Whether the court erred by denying Appellant's motion to suppress the photographs and videos found on his cellular telephone where law enforcement seized the telephone from his residence without a warrant and without consent in violation of the Fourth Amendment?

(ECF No. 21-4 at 4). Petitioner filed a *pro se* response on June 29, 2015, arguing that the trial court erred in denying his motion for a directed verdict and in allowing his mail man to remain on the jury. (ECF No. 21-5 at 1–11).

The Court of Appeals of South Carolina dismissed Petitioner's appeal on June 1, 2016. (ECF No. 21-6 at 1–2). The Court of Appeals issued the remittitur on June 17, 2016. (ECF No. 2-17 at 1). Petitioner filed a petition for writ of certiorari to the Supreme Court of South Carolina on June 20, 2016, arguing that the trial court erred in denying his motion to suppress and motion for directed verdict, testimony was perjured at the suppression hearing, Detective Mosher lied in obtaining the search warrant for his cellphone, the search warrant did not sufficiently describe his cellphone, Detective Gebhardt downloaded applications on the cellphone and altered the evidence, and there was a violation in the chain of custody of his cellphone. (ECF No. 21-8 at 125). The Supreme Court dismissed Petitioner's appeal on June 22, 2016. (ECF No. 21-9 at 1–2).

**Post-Conviction Relief**

On October 17, 2016, Petitioner filed a pro se application for post-conviction relief (PCR), alleging the following grounds:

> 1. Ineffective Assistance of Trial Counsel
> a. "Failing to raise and p[re]serve all issues involving the phone seized during the arrest of [Petitioner]"
> b. "Failed to object to perjurious and inconsistent statements made by the officers and the Solicitor at the pretrial [hearing] … and at trial …."
> c. "[Failing] to request the judge to instruct the jury to the lesser included offen[s]e."
> d. "[Failing to] request that evidence [be] narrowed to the charge it was alleged to support."
> e. "Made poor argument to support a directed verdict motion and abandoned argument for the other charge 1409."
> f. "Failed to argue the admissibility of evidence #11 shirt alle[]ged to belong to [Petitioner] due to illegal se[i]zure."
> g. "[Failing to] request certain evidence be withheld due to its potential to confuse and draw sympathy from the jury."
> 2. Ineffective Assistance of Appellate Counsel

        a. "Filed an Anders brief" when officers seized the cell phone without a warrant

(ECF No. 21-2 at 81–94).

The State filed its return on May 8, 2017. (ECF No. 21-2 at 95–100). An evidentiary hearing was held on October 1, 2018, before the Honorable D. Craig Brown (PCR court). *Id.* at 102–75. Petitioner was present at the hearing and represented by Leslie Sarji. *Id.* at 102–03. The State was represented by Christian Saville. *Id.* at 102. Petitioner, trial counsel, and appellate counsel testified at the hearing. *Id.* at 103.

The PCR court characterized Petitioner's claims presented at the hearing as follows:

1. Ineffective Assistance of Trial Counsel
   a. "Failure to object to State's use of phone application to extract previously deleted videos."
   b. "Failure of Trial Counsel to challenge the search warrant of the phone because of hearsay in affidavit supporting the search warrant."
   c. "Trial Counsel failed to properly argue issues related to identification."
   d. "Failure to conduct thorough cross-examination on Gebhardt and minor child."
   e. "Solicitor mischaracterized evidence."
   f. "Failure to object to law enforcement perjury."
   g. "Trial Counsel should have requested lesser-included offense."
   h. "Failure to challenge the admission of the tie-dye shirt."
2. Ineffective Assistance of Appellate Counsel
   a. "Should have argued seizure of phone and directed verdict issue."

(ECF No. 21-2 at 178).

On November 21, 2018, the PCR court filed an order of dismissal, finding that Petitioner had not established any constitutional violations or deprivations that would require the court to grant his application. (ECF No. 21-2 at 176–201).

**Post-Conviction Relief Appeal**

Petitioner, represented by Michael Lifsey, filed a notice of appeal of the PCR court's decision on November 3, 2022. (ECF No. 21-10 at 1). On April 19, 2023, Petitioner, represented by Wanda Carter, filed a *Johnson* petition presenting the following issue:

> Trial counsel erred in failing to request a pre-trial competency hearing from Minor #1, who was unable to produce any testimony whatsoever regarding the state's allegations in the case, because if such a pre-trial hearing had been held then the results would have supported the basis for a dismissal of the indictments involving Minor #1 prior to trial; and in addition, trial counsel erred in failing to move for the dismissal of these indictments when the forensic interview of Minor #1 was excluded from evidence after she testified at trial and the trial judge found that "Minor #1 did not testify as to the elements of the offense.

(ECF No. 21-11 at 3).

Petitioner filed a pro se response on May 24, 2023, arguing that testimony was perjured, the officers' seizure of the cellphone from his residence violated his Fourth Amendment rights, Detective Gebhardt tampered with the cellphone by allowing the installation of non-market applications, there was a significant gap in the chain of custody, and the absence of a preliminary hearing violated his due process rights. (ECF No. 21-12 at 1–15). The South Carolina Supreme Court ordered that the matter be transferred to the South Carolina Court of Appeals on June 9, 2023. (ECF No. 21-13 at 1). Petitioner filed a second pro se response on October 11, 2023, arguing that his trial counsel and the PCR court lied at the PCR hearing, testimony was perjured, the search warrant contained hearsay, and the PCR court erred in stating that the photos showed Petitioner committing the acts in question. (ECF No. 21-14 at 1–8). The Court of Appeals

denied Petitioner's petition for writ of certiorari on May 7, 2024. (ECF No. 21-15 at 1).

The Court of Appeals issued the remittitur on June 4, 2024. (ECF No. 21-16 at 1).

**Federal Habeas Petition**

Petitioner filed his instant pro se federal habeas Petition on September 13, 2024,

raising the following grounds for relief:

> **GROUND ONE**: Seizure of cell phone in violation of Fourth Amendment and Officer Moshers liens.
>
> **SUPPORTING FACTS**: Officer Mosher spoke to 2 children at Summervill Hospital E.R. where they alleged Petitioner had sexually assaulted them hours before in the living room of his house Minor 2 alledged Petitioner took a picture of her crotch with a "multi-color" cell phone. Mosher then returned to his office and prepaired two arrest warrants came to Petitioner's house inside made the arrest seized his "black and red phone without consent than lied to the Judge telling her the phone was seized at station.
>
> **GROUND TWO**: Wrongful seizure of applicants Casio G zone cell phone durring his arrest inside his residence 28 July 2013
>
> **SUPPORTING FACTS**: Minor 2 alledged [Petitioner] took a picture of her crotch with a "multi-color" cell phone She described this taking place in a dark room "All the lights were out" Officers seized a "black and red" cell phone during the arrest without a warrant or consent.
>
> **GROUND THREE**: Evidence tampering by Summerville P.D. Detective Richard Gebhardt
>
> **SUPPORTING FACTS**: Gebhardt took my cell phone claimed to place into airplane mode than placed the phone in his desk draw. He searched the phone the next day but was unable to "sync" with the phone he placed it back onto his desk draw and searched it again the next day after allowing "installation of non-market apps"
>
> **GROUND FOUR**: Failure of trial counsel to object to mishandling of evidence a Casio G Zone cell phone including a significant missing link.

> **SUPPORTING FACTS**: Officers seized the phone from inside Petitioner's residence without warrant or consent during his arrest 28 July 2013 they than took the phone back to the police station where Officer Gebhardt put it in his desk draw he stored the phone the same way the next day the phone is unaccounted for until 2 Aug 2013.

(ECF No. 1 at 5–10) (written as it appears in the original).

Petitioner filed a motion for summary judgment on December 9, 2024. (ECF No. 16). Respondent filed a response on December 23, 2024, (ECF No. 19), and Petitioner filed a reply on January 16, 2025, (ECF No. 25). On January 8, 2025, Respondent filed a motion for summary judgment and return and memorandum. (ECF Nos. 21; 22). On January 9, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. (ECF No. 23). Petitioner filed a response on February 10, 2025, (ECF No. 30), and Respondent filed a reply on February 18, 2025, (ECF No. 32). On March 7, 2025, Petitioner filed a motion to strike and grant judgment in favor of Petitioner. (ECF No. 35). Respondent filed a Response on March 21, 2025, (ECF No. 37), and Petitioner filed a Reply on March 31, 2025, (ECF No. 39).

On July 7, 2025, the Magistrate Judge issued the Report recommending that the Court grant summary judgment in favor of Respondent. Thereafter, Petitioner filed objections to the Report, to which Respondent filed a reply. (ECF Nos. 46; 47). Thus, this matter is ripe for review.

### III.    <u>STANDARD OF REVIEW</u>

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. 28 U.S.C. § 636(b).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific

error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## IV.  <u>DISCUSSION</u>

As referenced above, Petitioner offers four grounds for habeas relief. After reviewing each ground, the Magistrate Judge issued a Report recommending that the Court grant summary judgment in Respondent's favor. Plaintiff submits several objections to the Report.

(i)     <u>Grounds One and Two and Related Objections</u>

Grounds One and Two and the supporting facts read:

**GROUND ONE**: Seizure of cell phone in violation of Fourth Amendment and Officer Moshers liens.

**SUPPORTING FACTS**: Officer Mosher spoke to 2 children at Summervill Hospital E.R. where they alleged Petitioner had sexually

assaulted them hours before in the living room of his house Minor 2 alledged Petitioner took a picture of her crotch with a "multi-color" cell phone. Mosher then returned to his office and prepaired two arrest warrants came to Petitioner's house inside made the arrest seized his "black and red phone without consent than lied to the Judge telling her the phone was seized at station.

**GROUND TWO**: Wrongful seizure of applicants Casio G zone cell phone durring his arrest inside his residence 28 July 2013

**SUPPORTING FACTS**: Minor 2 alledged [Petitioner] took a picture of her crotch with a "multi-color" cell phone She described this taking place in a dark room  "All the lights were out"  Officers seized a "black and red" cell phone during the arrest without a warrant or consent.

(ECF No. 1, pgs. 5, 7) (written as it appears in the original). Relying on the face of the Petition, the Magistrate Judge construed Grounds One and Two as identical, freestanding Fourth Amendment-based challenges. (ECF No. 40, pgs. 13–15). However, a review of the record reveals a substantive distinction. As Petitioner explains in his opposition to summary judgment, Ground One challenges his conviction on the basis that unlawfully obtained evidence was erroneously submitted at trial. (ECF No. 30, pgs. 4–5). Petitioner maintains that officers seized his cellphone incident to arrest in violation of the Fourth Amendment, and accordingly, moved to suppress the incriminating evidence extracted from his cellphone. *Id.* Petitioner argues that the state trial court's denial of his suppression motion was predicated on "perjured testimony" and "an unreasonable determination of facts." (ECF No. 30, pg. 5).

Petitioner argues that Ground Two poses a "separate issue[]." (ECF No. 30, pg. 2). Petitioner's response brief explains that the cellphone description given to state investigating officials differed from the actual appearance of his cellphone, thus rending

the seizure unreasonable. (ECF No. 30, pg. 5). Petitioner posits that trial counsel failed to raise this issue at his suppression hearing. *Id.* Further, in his objections, Petitioner appears to argue that trial counsel was ineffective for failing to present Detective Mosher's post-arrest report during his suppression hearing.

Ground Two and its supporting facts fail to draw the above referenced distinctions and omit any reference to trial counsel. (ECF No. 1, pg. 7). However, a liberal construction of Petitioner's filings indicates Petitioner's intent to raise an ineffective assistance of counsel claim. *See Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022) (instructing courts to liberally construe filings made by *pro se* parties). Therefore, the Report's analysis of Grounds One and Two, and the objections thereto, are reviewed separately below.

(a) <u>Ground One</u>

The Magistrate Judge found that Petitioner was afforded an adequate opportunity to raise his Fourth Amendment claim in state court, and therefore, recommends that the Court grant summary judgment as to Ground One. Petitioner's objections primarily comprise incoherent ramblings regarding the veracity of reports and statements made by investigating state officials. (ECF No. 46, pgs. 2–3). Petitioner maintains that Detective Mosher falsely testified at his suppression hearing and offers a series of factual disputes that purportedly undermine the legitimacy of the seizure of his cellphone. *Id.* at 3. To the extent that Petitioner's objections serve as an attempt to relitigate the state court's denial of his suppression motion, Petitioner's objections are overruled.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)). Courts should examine "the relevant state statutes" and "the applicable state court decisions" when deciding whether a criminal defendant was afforded a meaningful opportunity to challenge a Fourth Amendment violation. *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).

Reviewing the record *de novo*, the Court finds no indication that the State's statutory scheme deprived Petitioner of a full and fair opportunity to raise his Fourth Amendment challenge. Rather, the record shows that the State afforded Petitioner every occasion to litigate his Fourth Amendment claim. Petitioner filed a motion to suppress photos and videos obtained from his cellphone, arguing that officers seized his cellphone incident to arrest without his consent in violation of the Fourth Amendment. (ECF No. 21-17, pg. 66). The state trial court held a hearing on Petitioner's motion, where it considered the testimony of Petitioner and investigating officers, and found no Fourth Amendment violation. *Id.* at 106–107. On direct appeal, Petitioner challenged the trial court's denial of his suppression motion. (ECF No. 21-4). The South Carolina Court of Appeals reviewed Petitioner's claims and dismissed the appeal. (ECF No. 21-6). Thereafter, Petitioner again challenged the denial of his suppression motion via a petition for writ of certiorari, which was dismissed by the South Carolian Supreme Court. (ECF Nos. 21-8 & 21-9).

Although Petitioner disagrees with the denial of his suppression motion, there is no indication of an absence of opportunity to litigate his Fourth Amendment claim in state court. The state trial court held a hearing on Petitioner's suppression motion, considered testimony from Petitioner and arresting officers, and found that "the State [] met its burden in proving that there was proper consent [to seize Petitioner's cellphone]." Petitioner was afforded an opportunity to challenge this ruling at every appellate level in state court. Because Petitioner was afforded a full and fair opportunity to raise his Fourth Amendment claims in state court, the Court cannot grant habeas relief to Petitioner on Ground One. Thus, Petitioner's objections are overruled.

(b) <u>Ground Two</u>

The Magistrate Judge likewise recommends granting summary judgment as to Ground Two. However, as discussed above, Petitioner appears to frame Ground Two as a claim for ineffective assistance of counsel. The "restriction on federal habeas review of Fourth Amendment claims" does not extend to "Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue." *Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986). Accordingly, the Court declines to adopt the Report's recommendation as to Ground Two and reviews *de novo* Petitioner's ineffective assistance of counsel claims pursuant to *Strikland v. Washington*, 466 U.S. 668 (1984). Because trial counsel's conduct was objectively reasonable and Petitioner suffered no prejudice from the exclusion of the above referenced evidence, Petitioner's claims fail.

To successfully challenge a sentence based on ineffective assistance of counsel, the petitioner must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that he was prejudiced by his counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure of proof on either prong ends the matter. *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A reviewing court must be highly deferential in scrutinizing counsel's performance and must filter from its analysis the distorting effects of hindsight. *Id.* at 688–89.

Although *Strickland* itself mandates deference to counsel's performance, the application of *Stickland* under § 2254 review is "doubly deferential." *See Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020). "Thus, the question is not whether a federal court believes the state court's determination under the *Strikland* standard was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Id.* (internal quotation marks and citations omitted). Accordingly, the central issue under § 2254 review is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* (internal quotation marks and citations omitted).

Petitioner argues that trial counsel was ineffective for failing to submit evidence that undermined the legitimacy of the search and seizure of his cellphone. Specifically, Petitioner points to a perceived discrepancy between a victim's description of his cellphone and the cellphone's actual appearance. (ECF No. 30, pg. 5). Petitioner notes

that one victim described his cellphone as "multi-colored." (ECF No. 30, pg. 5). Petitioner states, however, that Detective Gebhardt later described his cellphone as "red and black." *Id.* Petitioner argues that the discrepancy undermines the legitimacy of the cellphone search, particularly when the victim observed the cellphone in a "dark room" with the "lights off." *Id.* at 6.

Additionally, Petitioner argues in his objections that trial counsel was ineffective for failing to produce Detective Mosher's incident report. (ECF No. 46, pgs. 3–4). Petitioner points to a particular portion of the report that states that the cellphone was seized from Petitioner at his residence. Petitioner maintains that the report contradicts his later testimony and should have been presented to the state trial court. *Id.* at 3. The Court reviews each claim *de novo*.

Turning to Petitioner's first argument, the Court finds that trial counsel's decision to leave unaddressed the minor victim's cellphone description was objectively reasonable. As an initial matter, it is not apparent that the victim's description inaccurately described Petitioner's cellphone. The phone was, in fact, multicolored, as it displayed both red and black markings. The PCR Court made this observation: "[T]his Court finds the record reveals ample basis for probable cause to support a search warrant of Applicant's phone. Testimony from trial revealed the seized phone belonging to [Petitioner] was red and black, which does coincide with the victim's description of [Petitioner's] phone as multicolored." (ECF No. 21-2, pg. 449).

Moreover, even constituting the victim's description as ambiguous, the Court finds no error on behalf of trial counsel. A reasonable argument exists that challenging a

description that does not actually conflict with the cellphone's appearance would only undermine Petitioner's credibility and trial strategy, especially where the cellphone contained child sexual abuse material of the victim. For like reasons, Petitioner suffered no prejudice by the exclusion of the purported discrepancy.

Turning next to Petitioner's contention that trial counsel was ineffective for failing to produce Detective Mosher's post-arrest report, the Court again finds no error. Although unclear, Petitioner appears to argue that the post-arrest report contradicts Detective Mosher's pre-trial testimony concerning the events leading up to the seizure of his cellphone. (ECF No. 46, pgs. 3–4). Petitioner points specifically to a portion of the post-arrest report where Detective Mosher stated, "the phone was seized from Jonathan Brown during his arrest." (ECF No. 46-2, pg. 2).

At Petitioner's suppression hearing, Detective Mosher offered the following testimony:

> I explained to Mr. Brown that we did have arrest warrants for him. At no time did it ever get violent. Everything was very cordial, calm. Advised him he was being placed under arrest, and I did read him his *Miranda* warning. At the time we walked inside the residence, after he invited us in, he was eating something. At the time I thought it was like a sandwich, but he also had a phone in his hand. At that time, when I told him he was under arrest, he put everything down on the computer-stand, which is right there next to the front door. He was handcuffed. Like I said, he was read his *Miranda* Warnings. And at that time, we were getting ready to leave, he wasn't asked any additional questions pertaining to the allegations of the warrants, but prior to leaving I wanted to make sure that the residence was secured and that he had his property he wanted to take to the jail with him, so I did ask him if he wanted to take his cell phone and keys with him. At that point he said yes. He had his wallet on him, so we collected the cell phone and keys off the computer stand and took it at his request. We left the residence.

(ECF No. 21-17, pgs. 80–81).

Petitioner argues that this testimony conflicts with the post-arrest report, which states "the phone was seized from Jonathan Brown during his arrest." (ECF No. 46-2, pg. 2). Petitioner maintains that trial counsel should have presented the post-arrest report to the state trial court because it proves that Detective Mosher committed perjury at his suppression hearing. (ECF No. 46, pgs. 1–2). The Court draws no such inference and finds that trial counsel's conduct was objectively reasonable, and that Petitioner suffered no prejudice by not producing the post-arrest report.

Although the language used in the post-arrest report varies slightly from Detective Mosher's pretrial testimony, the post-arrest report offers no indication that Detective Mosher committed perjury. Both statements indicate the same principle: Petitioner's cellphone was taken by law enforcement incident to his arrest.[1] Accordingly, presenting the post-arrest report to the state trial court would have only bolstered Detective Mosher's testimony.

For the same reason, Petitioner suffered no prejudice by the absence of the post-arrest report in the record. The state trial court conducted a thorough suppression hearing where it heard testimony from Petitioner and Detective Mosher. Finding that no Fourth Amendment violation occurred, the trial court denied Petitioner's suppression motion. Because the post-arrest report does not undermine Detective Mosher's live testimony, it

---

[1] Detective Mosher's trial testimony is also consistent with the post-arrest report and his pretrial statements. At trial, Detective Mosher testified that Petitioner requested that his keys, wallet, and cellphone accompany him to the police station. (ECF No. 21-2, pg. 273). Detective Mosher further testified that Detective Gebhardt seized the cellphone once officers conducted a post-arrest interview. *Id.*

is unlikely that its submission would have influenced any weight afforded to Detective Mosher's testimony. Accordingly, the Court finds that trial counsel acted reasonably, and that Petitioner suffered no prejudice by the absence of the post-arrest report. Therefore, Petitioner's objection is overruled.

(ii)    <u>Ground Three and Related Objections</u>

Petitioner's third ground for habeas relief and the supporting facts read:

**GROUND THREE**: Evidence tampering by Summerville P.D. Detective Richard Gebhardt

**SUPPORTING FACTS**: Gebhardt took my cell phone claimed to place into airplane mode than placed the phone in his desk draw. He searched the phone the next day but was unable to "sync" with the phone he placed it back onto his desk draw and searched it again the next day after allowing "installation of non-market apps"

(ECF No. 1, pg. 8) (written as it appears in the original). On its face, Ground Three appears to advance a freestanding challenge to law enforcement's installation of a third-party application used to extract deleted photographs and videos depicting child sexual abuse. The Report recommends dismissing this claim because it was not raised at trial or on direct appeal. However, in his objections, Petitioner appears to advance Ground Three as an ineffective assistance of counsel claim. (ECF No. 46, pg. 5). The Court reviews each theory *de novo*.

To the extent that Petitioner raises Ground Three as a freestanding challenge to law enforcement's installation of a third-party application, the Court finds that his claim is procedurally barred. When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the

state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. *Smith v. Murray*, 477 U.S. 527, 533 (1986). This situation is sometimes referred to as procedural bypass, as the petitioner has "bypassed" his state remedies. In other words, procedural default/bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Procedural default/bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

South Carolina is an issue preservation state, meaning, "[a]t a minimum, [] an issue [must] be raised and ruled upon by the trial judge." *Herron v. Century BMW*, 395 S.C. 4612, 719 S.E.2d 640, 465 (2011) (holding that it is "axiomatic that an issue cannot be raised for the first time on appeal") (quotation omitted)*; see also Mahdi v. State*, 678 S.E.2d 807, 808 (S.C. 2009) (holding that because there was no objection to alleged sentencing error in the trial/sentencing court, no issue had been preserved for the appellate court's review). Here, Petitioner did not raise the issue regarding the installation of a third-party application at trial. Accordingly, to the extent that Petitioner raises this as a freestanding, constitutional claim, the Court adopts the Report and grants summary judgment in Respondent's favor.

Further, to the extent that Petitioner argues that trial counsel was ineffective for failing to raise the issue concerning the installation of a third-party application at trial, Petitioner's claim is dismissed. The PCR court ruled on this issue as follows:

> Trial Counsel testified that during his representation [Petitioner] was preoccupied with a theory the State somehow implanted the incriminating materials onto his cell phone. Now, [Petitioner] appears to concede they were previously deleted videos but argues Trial Counsel should have objected to their extraction.
>
> As the record reflects and Trial Counsel testified, law enforcement did use a forensic program known as Secure View 3 by Susteen to recover the deleted videos and photographs appearing to show various instances of Petitioner sexually penetrating his daughter and niece in various manners. Furthermore, the record reveals and Trial Counsel testified the phone was seized then securely stored in a locked drawer and placed on airplane mode, which prevents signal from leaving the device or being received by the device, over the weekend following [Petitioner's] arrest. To the extent [Petitioner] claims law enforcement fabricated these materials or transmitted them from another device to [Petitioner's] phone, this is, as Trial Counsel testified, fantastical.
>
> After obtaining a search warrant for the contents of the phone, and only then, law enforcement used the forensic program to retrieve the deleted incriminating materials. There was nothing illegal about law enforcement's retrieval of the incriminating materials on [Petitioner's] cell phone by way of the forensic program. Accordingly, there was nothing objectionable about this issue and Trial Counsel cannot be held deficient for failing to object. Furthermore, [Petitioner] has failed to prove prejudice from the alleged deficiency because even if Trial Counsel had objected, there was no legal basis on which to object, and therefore there is no reasonable probability the outcome of the proceedings would have been different had Trial Counsel objected.

(ECF No. 21-2, pgs. 448–49) (citations omitted).

Petitioner appears to advance the same "fantastical" argument here:

> In Gebhard written report as well as he testified to at trial that prior to searching the phone he allowed non market APPS to install these would have had to be downloaded at that point no telling what else might have came in to the phone Petitioner did raise this under ineffective assistance of counsel in his PCR as well as to the highest court.

(ECF No. 46, pg. 5) (written as it appears in the original). Petitioner's speculative hypothesis fails to move the needle. As the PCR court noted, there is no evidence that state law enforcement surreptitiously downloaded incriminating evidence onto

Petitioner's cellphone. Therefore, trial counsel could not reasonably raise this defense at trial, and Petitioner suffered no prejudice from its absence. *See Savino v. Murray*, 82 F.3d 593, 599 (4th Cir. 1996) ("[I]f there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue it cannot be prejudicial.").

    (iii)   <u>Ground Four and Related Objections</u>

Ground Four and the supporting facts read:

> **GROUND FOUR**: Failure of trial counsel to object to mishandling of evidence a Casio G Zone cell phone including a significant missing link."

> **SUPPORTING FACTS**: Officers seized the phone from inside Petitioner's residence without warrant or consent during his arrest 28 July 2013 they than took the phone back to the police station where Officer Gebhardt put it in his desk draw he stored the phone the same way the next day the phone is unaccounted for until 2 Aug 2013.

(ECF No. 10, pg. 10) (written as it appears in the original). Ground Four challenges trial counsel's failure to contest the time in which Petitioner's cellphone was stored in Detective Gebhardt's desk. *Id.* As the Report notes, "[t]rial counsel did not cross examine Detective Gebhardt at trial, and therefore no challenge to the storage of Petitioner's cellphone prior to obtaining the search warrant was presented." (ECF No. 40, pg. 19). The Magistrate Judge recommends that the Court dismiss Ground Four because trial counsel's conduct was objectively reasonable:

> A reasonable argument exists that trial counsel's decision to not cross-examine Detective Gebhardt on the chain of custody of the cell phone was strategy rather than deficiency, as a cross examination of Detective Gebhardt would have very likely increased the length of Detective Gebhardt's testimony about the videos and photos in front of the jury.

*Id.* at 22. Petitioner objects to the Report, arguing that "while it was counsels trile strategy not to keed the images in front of the jury therefore he did no cross examane Gebhardt removing the evidence all together do to one of the many 4th Amendment violations is a better one." (ECF No. 46, pg. 5).

Petitioner's argument is insufficient to overcome *Strickland's* "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. As the Magistrate Judge noted, trial counsel reasonably calculated that additional cross-examination of Detective Gebhardt likely would have further exposed the jury to incriminating evidence extracted from Petitioner's cellphone. Although Petitioner argues that an alternate trial strategy would have been a "better one," Petitioner has failed to show that trial counsel's strategy was "objectively unreasonable." Thus, the Court adopts the Report and grant's summary judgment in Respondent's favor.

## V.    CONCLUSION

After a *de novo* review of the applicable law and the record of this case, the Court hereby adopts the Report and Recommendation (ECF No. 40) as modified herein. Accordingly, Respondent's motion for summary judgment (ECF No. 22) is granted, and the Petition (ECF No. 1) is dismissed with prejudice.[2] For those reasons, Petitioner's motion for summary judgment (ECF No. 16) is denied. It is further ordered that a certificate of

---

[2] Petitioner's motion to strike (ECF No. 35) is dismissed as moot.

appealability is denied because Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[3]

     IT IS SO ORDERED.

August 18, 2025
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[3] A certificate of appealability will not be issued absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that Petitioner has failed to make "a substantial showing of the denial of a constitutional right."